NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIM MACK,<br><br>        Plaintiff,<br><br>v.<br><br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No.: 2:15-cv-3470 (CCC)<br><br><br><br>**OPINION** |

**CECCHI, District Judge.**

## I.    INTRODUCTION

Before the Court is Plaintiff Kim Mack's ("Plaintiff") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits ("DIB") and supplemental social security income ("SSI") under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part, vacated in part, and the matter is remanded for further proceedings consistent with this Opinion.

## II.    BACKGROUND

### A.    Procedural Background

Plaintiff applied for DIB and SSI in March 2012, alleging disability as of February 5, 2012.

1

Tr.[1] at 17.  The applications were denied initially on June 28, 2012, and upon reconsideration on January 10, 2013.  *Id.*  On June 4, 2013, a hearing was held before ALJ Jack Russak.  *Id.*  ALJ Russak issued a decision on September 10, 2013 finding Plaintiff was not disabled, as defined by the SSA.  *Id.* at 27 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).  Plaintiff requested review of the decision and the Appeals Council denied the request on March 19, 2015.  Tr. at 1.  On May 20, 2015, Plaintiff instituted this action.  ECF No. 1.

**B.    Factual Background**

Plaintiff was born on February 7, 1977.  Tr. at 97.  Plaintiff has a high school education, *id.* at 21, and has work experience as a hotel housekeeper and fast food worker.  *Id.* at 25.  Plaintiff testified she last worked as a housekeeper when she was let go in 2009.  *Id.* at 48-50.  Plaintiff claimed disability due to psoriatic arthritis, gastritis, cirrhosis, asthma, carpal tunnel in both hands, sciatica, and endometriosis.  *Id.* at 245.  Plaintiff indicated that on a day-to-day basis her mother and boyfriend assist her in household work and caring for her seven-year-old son.  *Id.* at 21.

On March 27, 2012, Dr. Anthony Mangia, Plaintiff's primary care physician, completed a general medical report in which he noted that Plaintiff's medical history included psoriasis, psoriatic arthritis, and morbid obesity.  *Id.*  Dr. Mangia also completed a medical sources statement in May 2013, which indicated Plaintiff was limited by her spinal stenosis, herniated disc, and psoriatic arthritis.  *Id.* at 23.

Between March 2012 and June 2013, Dr. Dmitry Khasak, Plaintiff's dermatologist, indicated that Plaintiff's psoriasis showed significant improvement after beginning Stelara injections and no showed psoriatic lesions upon examination.  *Id.* at 22.   On June 1, 2012, Dr. Alexander Hoffman conducted a consultative examination of Plaintiff.  *Id.*  Dr. Hoffman indicated

---

[1] "Tr." refers to the certified record of the administrative proceedings.  ECF No. 7.

a marked improvement of Plaintiff's psoriasis and arthritis symptoms. *Id.* Further, Dr. Hoffman noted Plaintiff was slightly obese, walked with a slow gait without an assistive device, and had a slightly limited range of motion. *Id.*

On June 19, 2012, Plaintiff underwent a series of x-rays which revealed mild early degenerative changes in the mid-thoracic region. *Id.* Treatment records also indicate Plaintiff reported joint and back pain and stiffness, and was prescribed medication for these complaints. *Id.*

On September 21, 2012, Plaintiff underwent foot and ankle surgery. *Id.* Dr. Del Monte, Plaintiff's podiatrist, indicated no complications during the surgery and that Plaintiff was discharged home in stable condition. *Id.* In July 2013, Dr. Del Monte reported that while Plaintiff experienced some initial improvement from the surgery, she continued to report pain and that Plaintiff had difficulty walking, standing, and performing daily activities due to pain. *Id.* at 23.

## III.   **LEGAL STANDARD**

### A.   **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

**B.      Determining Disability**

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to

prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382a(3)(D).

## C.   Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the Plaintiff has an impairment that limits her ability to work. Id. Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## IV.    DISCUSSION

### A.    Summary of the ALJ's Findings

At step one, the ALJ found Plaintiff met the insured status requirements of the SSA and

had not engaged in substantial gainful work activity since the application date. Tr. at 19. At steps

two and three, the ALJ found Plaintiff's impairments of psoriasis, psoriatic arthritis, asthma, spinal

stenosis, and obesity were "severe," but not severe enough to meet, either individually or in

combination, any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* at 19-

20.

The ALJ concluded Plaintiff had the residual functional capacity ("RFC") to perform the

exertional demands of sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a). *Id.*

at 20.  The ALJ found the work must allow Plaintiff to "alternate sitting or standing positions at

30-minute intervals throughout the day, provided that she is not off task more than 5% of the work

period." *Id.* at 21.  The ALJ further found Plaintiff "must avoid concentrated exposure to extreme

temperatures, wetness, humidity, fumes, odors, dust, gases, poorly ventilated areas, and chemicals,

and must avoid frequent exposure to moving machinery and unprotected heights." *Id.*  To make

this conclusion, the ALJ considered all of Plaintiff's symptoms and their consistency with the

evidence. *Id.*  Specifically, the ALJ considered Plaintiff's testimony regarding her daily activities,

in which she stated she helps her seven-year-old son, tries to cook, uses a computer, reads books,

and watches television. *Id.* at 24.  The ALJ also took into consideration the treatment records

which indicated significant improvement in Plaintiff's psoriasis, minimal positive findings on

physical examination, and diagnostic imaging reports which show minimal degenerative changes.

*Id.* at 23-24.  The ALJ also considered the reports of Dr. Hoffman, Dr. Mangia, and Dr. Del Monte.

*Id.* at 24-25.

At step four, the ALJ found Plaintiff was incapable of performing past relevant work as a hotel housekeeper and fast food worker. *Id.* at 25. At step five, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff could perform. *Id.* at 26-27. The ALJ identified these jobs as: telephone quotation clerk, order clerk, and call out operator. *Id.* at 27.

**B.    Analysis**

Plaintiff makes the following arguments in support of her contention that the ALJ's decision should be remanded: (1) Plaintiff is presumptively disabled at step three; (2) the RFC was not supported by substantial evidence; and (3) the ALJ's hypothetical questions to the vocational expert ("VE") cannot be considered substantial evidence. *See generally* Plaintiff's Brief ("Pl. Br.") ECF No. 10. The Court will address each argument in turn.

**1.    Step Three**

The Listings assessed at step three describe impairments the Commissioner considers severe enough to prevent an individual from engaging in any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 416.925(a). The Listings describe impairments giving rise to presumptive disability, i.e., if an individual meets a listing, she is considered to be disabled without consideration of whether she can perform work activity. *Id.* § 416.920(a)(4)(iii); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). To be found presumptively disabled, a claimant must show all of the criteria for a listing have been met. 20 C.F.R. § 416.925(c)(3); *Zebley*, 493 U.S. at 530. In evaluating the ALJ's decision at step three, this Court looks at the ALJ's decision as a whole. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ("[The case law] does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the case law] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.").

Plaintiff argues this case should be remanded because Plaintiff is presumptively disabled, as she meets Listings 14.09 and 8.05. Pl. Br. at 17. Further, Plaintiff argues the ALJ did not sufficiently consider Plaintiff's obesity and the ALJ did not combine and compare Plaintiff's impairments as required by the Regulations. *Id.* at 19.

To meet Listing 14.09(A)(1), which deals with inflammatory arthritis, Plaintiff must show a "[p]ersistent inflammation or persistent deformity of . . . one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively." 20 C.F.R. pt. 404, Subpt. P, App. 1 § 14.09. The inability to ambulate effectively "is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of *both upper extremities*." *Id.* § 1.00(b) (emphasis added). The Regulations provide that "examples of ineffective ambulation include . . . the inability to walk without the use of a walker, two crutches or two canes . . . ." *Id.* Plaintiff argues that because she uses a cane, she has the inability to ambulate effectively, and therefore is presumptively disabled under this listing. Pl. Br. at 13-14. However, while the Regulations provide that ineffective ambulation requires the use of two canes, limiting the functioning of both upper extremities, Plaintiff alleges that she only needs one cane to walk – leaving her other arm free. Therefore, by definition Plaintiff does not sufficiently allege ineffective ambulation as required by Listing 14.09(A). Accordingly, the ALJ properly found Plaintiff did not meet this Listing.

To meet listing 14.09(B), Plaintiff must show

> Inflammation or deformity in one or more major peripheral joints with (1) [i]nvolvement of two or more organs/body systems with one or more of the organs/body systems involved to at least a moderate level of severity; and (2) [a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss."

20 C.F.R. pt. 404, Subpt. P, App. 1 § 14.09(B). Plaintiff argues she "suffers 'involvement of body systems' in at least four areas: musculoskeletal (she has severe spinal stenosis), respiratory (she

has asthma), dermatological (she has psoriasis) and constitutional (she is morbidly obese)." Pl. Br. at 13. Plaintiff further alleges she suffers from an "auto-immune disorder causing fatigue, malaise, anemia and skin eruptions." *Id.* at 19-20. Here, the ALJ's decision states only his conclusion that Plaintiff does not meet Listing 14.09 because "it has not resulted in an . . . involvement of two or more body systems, with one system involved at least to a moderate[] level of severity . . . or repeated manifestations, with at least two of the constitutional symptoms or signs." Tr. at 20. As the ALJ offered no explanation as to why Plaintiff's impairments do not meet Listing 14.09(B), this Court cannot offer any meaningful judicial review. The Court remands the case for the ALJ to fully assess whether Plaintiff's impairments and allegations of constitutional symptoms meet listing 14.09(B).

To meet Listing 8.05, Plaintiff must show she had dermatitis "with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." *Id.* § 8.05. The ALJ found Plaintiff did not meet this listing because the record did not indicate Plaintiff's psoriasis "resulted in extensive skin lesions that persisted for at least three months despite continuing treatment as prescribed. Specifically, the dermatology treatment records dated from March 2012 through June 2013 indicate that [Plaintiff's] condition was improving and under control with treatment with no psoriatic lesions or plaque." Tr. at 20. Plaintiff argues that the listing is met because she was diagnosed with plaque psoriasis on May 30, 2012, Plaintiff's lesions persist despite improving with treatment, and Dr. Mangia found "defuse psoriasis" in March 2012. Pl. Br. at 15.

Listing 8.05 requires the symptom of extensive skin lesions lasting longer than three months with continuing treatment. A diagnosis of plaque psoriasis is not sufficient by itself to meet the Listing. Although Dr. Mangia noted a physical finding of "diffuse psoriasis" in March

2012, nearly all of Dr. Khasak's reports from March 2012 until June 2013 indicate that with treatment of Stelera, Plaintiff's psoriasis was under control and Plaintiff had no psoriatic plaques or lesions. Tr. at 491-507. Dr. Hoffman also noted in June 2012 that her psoriasis showed "marked improvements." *Id.* at 392. Plaintiff has not offered additional evidence to indicate her psoriasis persisted for longer than three months with treatment. Therefore, the ALJ's finding that Plaintiff did not meet Listing 8.05 was supported by substantial evidence.

Next, Plaintiff argues the Court should remand due to the ALJ's failure to evaluate Plaintiff's obesity in accordance with Social Security Ruling ("SSR") 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002).[2] The Third Circuit addressed this issue in *Diaz v. Commissioner of Social Security*, where the ALJ found obesity was a severe impairment at step two, but failed to assess the impact of obesity on the plaintiff's other impairments at step three. 577 F.3d 500, 503 (3d Cir. 2009). The court determined that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Id.* at 504. In assessing the impact of claimant's obesity, the ALJ must discuss the evidence and explain her reasoning in a manner that would be "sufficient to enable meaningful judicial review." *Id.*

The Commissioner correctly argues that Plaintiff must provide specific medical evidence indicating how Plaintiff's obesity affects her work-related limitations. Def. Br. at 16-17. An ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-01p, 2002 SSR LEXIS 1 *4. In *Rutherford v. Barnhart*, the Third Circuit held remand is unwarranted, even if an ALJ fails to mention obesity, if a plaintiff fails to specify

---

[2] Plaintiff argues the ALJ did not comply with SSR 00-03p. Pl. Br. at 17. However, in 2002, the Commission implemented SSR 02-01p, which superseded SSR 00-03p. 2002 SSR LEXIS 1 (Sept. 12, 2002). Therefore, this Court will address the ALJ's compliance with the relevant SSR.

how his weight impaired his ability to work, particularly when the ALJ has relied on physicians who were aware of the plaintiff's weight and height. 399 F.3d 546, 553 (3d Cir. 2005).

Here, the ALJ has relied upon physicians who were aware of Plaintiff's weight and height, and Plaintiff did not assert obesity as an impairment in her Disability Report. Tr. at 245. When asked to list "physical or mental conditions that limit your ability to work," Plaintiff identified seven impairments, and did not include obesity. *Id.* Plaintiff also "has not specified how [obesity] would affect the five-step analysis undertaken by the ALJ, beyond an assertion . . . . [of] generalized" impact. *Rutherford*, 399 F.3d at 553; *see also Santini v. Comm'r of Soc. Sec.,* No. 08-5348, 2009 U.S. Dist. LEXIS 96649 at *17 (D.N.J. Oct. 15, 2009), *aff'd* 413 F. App'x 517 (3d Cir. 2011) ("The problem for Plaintiff . . . is that she has pointed to no medical evidence of record that her obesity *has* caused a substantial or relevant work-related limitation of her functioning. Absent that, the ALJ could not have come to any other conclusion . . . .").

Furthermore, unlike the ALJ in *Diaz*, in this case, the ALJ determined Plaintiff's obesity constituted a severe impairment at step two, and at step three, the ALJ considered the effect of Plaintiff's obesity on her work-related function. Tr. at 20. The ALJ noted that obesity "was considered in conjunction with [Plaintiff's] other impairments," and "there is no indication in the record that [Plaintiff's] obesity has exacerbated her psoriatic arthritis, back condition, or asthma, or that it impaired her ability to ambulate effectively." *Id.* Plaintiff has not identified any further medical evidence to suggest her obesity affects her work-related limitations in a more specified manner. Accordingly, the Court finds the ALJ properly took Plaintiff's obesity into consideration.

Lastly, Plaintiff argues the decision should be remanded because the ALJ did not combine and compare Plaintiff's impairments, as required by the Regulations. *See* 20 C.F.R. § 416.926(b)(3); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). However,

the Regulations do "not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, the ALJ must simply "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.* In *Jones*, the Court found the ALJ's analysis was sufficient where the ALJ's step three analysis stated "after 'carefully comparing the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments,' 'the claimant's impairments do not meet or equal the criteria established for an impairment shown in the Listings.'" *Id.* at 503.

Here, as the Court previously found, the ALJ's analysis of Listing 14.09(B) was not sufficiently developed to provide for meaningful judicial review. On remand, the ALJ should also assess whether Plaintiff's impairments in combination meet or medically equal one of the listed impairments.

### 2.     RFC Finding was Supported by Substantial Evidence

Plaintiff argues the ALJ's RFC finding was not supported by substantial evidence because the ALJ rejected the reports of Dr. Mangia and Dr. Del Monte, and the ALJ does not explain the basis for his finding that Plaintiff must be allowed to alternate sitting and standing positions. Pl. Br. at 27.

While an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims,* SSR 96-8P (S.S.A. July 2, 1996), Plaintiff here only argues the ALJ should have interpreted the medical evidence differently. Pl. Br. at 24-26. Under the substantial evidence standard of review, the issue is whether sufficient evidence reasonably

supports the ALJ's analysis, not whether the evidence could support a different finding. *See Logan v. Colvin*, No. 14-4571, 2015 WL 5722391, at *7 (D.N.J. Sept. 29, 2015) (finding "[t]he role of the District Court in reviewing an ALJ's denial of disability benefits is not to reweigh the evidence presented, but instead to determine whether the ALJ made a decision supported by substantial evidence").

"In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz*, 577 F.3d at 505 (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummet v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (internal citation omitted). While "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," *Brown v. Astrue*, 649 F.3d 193 n.2 (3d Cir. 2011), an ALJ must give a treating physician's opinion controlling weight when the opinion is 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and 2) "is not inconsistent with the other substantial evidence in [the claimant's] case record." *Johnson v. Comm'r Soc. Sec.*, 529 F.3d 198, 202 (3d Cir. 2008) (quoting 20 C.F.R. § 404.1527).

Here, the ALJ explained that while he gave some weight to Dr. Mangia's opinion as Plaintiff's primary care physician, the medical evidence did not "support the significant physical limitations in his assessment." Tr. at 25. The ALJ noted that although Dr. Mangia indicated Plaintiff was limited by spinal stenosis, herniated disk, and psoriatic arthritis, "the diagnostic imagine reports show[] only slight degenerative changes and straightening with no evidence of disc herniation," and Dr. Hoffman reported "definite improvement" of Plaintiff's psoriasis symptoms. *Id.* at 22-25. The ALJ also noted that Plaintiff's physical limitations were not

13

supported by Dr. Mangia's own treatment notes which indicated "minimal positive findings on physical examination including mild obesity, decreased range of motion in the neck, normal sensation and reflexes, normal range of motion in the ankles and positive pain on leg raises." *Id.* at 25. The Court finds the ALJ sufficiently explained that while he gave some weight to Dr. Mangia's opinion, he did not fully credit it because it was not supported by the medical evidence on record.

Next, Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Del Monte and that the contrary medical opinions do not account for Plaintiff's foot surgery in September 2012. Pl. Br. at 25. The ALJ explained that he gave some weight to Plaintiff's treating podiatrist, Dr. Del Monte's opinion, "but his general statement that her conditions have caused some difficulty in her physical activities" was not specific enough to provide the ALJ with an explanation of the limitations resulting from Plaintiff's conditions. Tr. at 25. Here, the ALJ explained that he chose to give great weight to Dr. Hoffman's opinion, the consultative examiner, who examined Plaintiff on June 1, 2012, which contradicted Dr. Del Monte's opinion. Tr. at 24. The ALJ explained that Dr. Hoffman's opinions were based on a "thorough, in person examination of" Plaintiff, and that they were "well supported by the treatment records." *Id.* Specifically, Dr. Hoffman noted "a slow gait, no assistive device, a slightly obese appearance, some older evidence of psoriasis with no major discoloration, slightly decreased range of motion and slight tenderness on deep palpitation in the knees." *Id.* at 25.

Plaintiff argues the ALJ should not have credited Dr. Hoffman's report because Plaintiff had foot surgery after Dr. Hoffman's examination, and therefore the report is not representative to Plaintiff's RFC. While it is true that Plaintiff had surgery on her foot after Dr. Hoffman's examination, it was Plaintiff's burden to provide evidence that she did not have the RFC to perform

any substantial gainful activity as of her alleged onset date. *See* 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) ("The claimant bears the ultimate burden of establishing steps one through four.") (citing *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004)). Where Plaintiff's alleged onset date in this case is February 5, 2012, the ALJ properly relied upon a medical report from June 2012. Here, the ALJ considered all of the medical evidence and provided an explanation for why he chose to credit the opinion of Dr. Hoffman over Dr. Mangia and Dr. Del Monte.

Next, Plaintiff argues the RFC analysis is unsupported by substantial evidence because the ALJ provides an unexplained limitation which requires the work to "allow [Plaintiff] to alternate sitting or standing positions at 30-minute intervals throughout the day." Pl. Br. at 27-28. However, as stated above, the ALJ gave great weight to Dr. Hoffman's opinion. Dr. Hoffman's opinion, in relevant part, stated that Plaintiff's "pain is exacerbated by remaining in one position for too long." Tr. at 24. Therefore, the sit-stand limitation the ALJ included in Plaintiff's RFC is supported by Dr. Hoffman's opinion and the ALJ's discussion of Dr. Hoffman's report. Accordingly, the Court finds the ALJ's consideration of the medical evidence and the RFC analysis to be supported by substantial evidence.

### 3. The ALJ's Hypothetical Questions to the VE Constitute Substantial Evidence

It appears Plaintiff argues the ALJ's hypothetical questions to the VE do not constitute substantial evidence because "the DOT doesn't recognize sit/stand options, doesn't describe the computer-intensive character of the jobs as performed today and doesn't recognize sedentary work activity while standing and balancing with the use of a cane." Pl. Br. at 31-32. Plaintiff further argues the ALJ's decision is contrary to SSR 83-12, which "identifies the types of jobs which allow

for sit/stand options." *Id.* at 28.

"SSR 83-12 provides that unskilled jobs are 'particularly structured so that a person cannot ordinarily sit or stand at will,' however, where a sit/stand option is required, a vocational expert or specialist 'should be consulted to clarify the implications for the occupational base.'" *Wible v. Astrue*, 2007 U.S. Dist. LEXIS 56615, *13-14, 121 (E.D. Pa. 2007) (quoting 1983 SSR LEXIS 32 (Jan. 1, 1983)).   Here, the ALJ consulted with the VE regarding the sit/stand option. Tr. at 75. When the ALJ included the sit/stand option in a hypothetical question, the VE indicated an employee would be able to maintain the occupations that had been identified. *Id.* Moreover, the VE indicated that the testimony was in accordance with the DOT, and any variance was identified, as required by SSR 00-4p. 2000 SSR LEXIS 8 (Dec. 4, 200) (providing that the ALJ has a duty to inquire on the record whether or not there is an inconsistency between the DOT and the testimony of the VE).   Accordingly, the Court finds the hypothetical questions posed to the VE constitutes substantial evidence.

## V.    CONCLUSION

For the foregoing reasons, the Court will affirm in part and vacate in part the ALJ's decision and remands this case for further administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

**DATED**: _March  16_____, 2017

_____
**CLAIRE C. CECCHI, U.S.D.J.**

16